SOUTHERN IMPROVEMENT COMPANY *v.* ROAD IMPROVE-
MENT DISTRICT No. 5.

Opinion delivered May 18, 1925.

1. EXCEPTIONS, BILL OF—STATUTORY METHODS OF PRESERVING EXCEP-
   TIONS.—Where a party in a chancery cause undertakes to preserve
   exceptions to rulings of the trial court not appearing of record
   by bill of exceptions, the statutory methods must be pursued.

2. EXCEPTIONS, BILL OF—BYSTANDER'S BILL—TIME OF FILING.—A by-
   standers' bill of exceptions, not filed within the time provided
   by Crawford & Moses' Digest, § 1318, cannot be considered as part
   of the record.

Appeal from Arkansas Chancery Court, Southern
District; *John M. Elliott*, Chancellor; modified.

*Sam W. Trimble, R. W. Wilson* and *W. G. Riddick,*
for appellant.

*J. M. Brice* and *John W. Moncrief,* for appellee.

WOOD, J.   Road Improvement District No. 5 of Ark-
ansas County, hereafter called district, was created by
act No. 169 of the Acts of the General Assembly of Ark-
ansas in the year 1919.   The district contained 84.5 miles
of road radiating in four main branches from the town
of DeWitt.   The main branches or roads out of DeWitt
were divided into sections, and these sections were sub-
divided into two or more lines.   The contract for build-
ing the road was awarded to the Southern Improvement
Company, hereafter called appellant.   The district
entered into a contract with the appellant for the con-
struction of the improvement, and the appellant sublet a
small portion or line of the road to one McNulty, who
assigned his contract to one A. M. Perdue.   Perdue, claim-
ing that he had completed the work according to his con-
tract, demanded of the district inspection and accept-
ance of the same, upon the refusal of which he instituted
this action in the chancery court of Arkansas County on
the 5th of August, 1922, against the appellant and the
Southern Surety Company, the surety on appellant's
bond, for the performance of its contract. Perdue alleged
that the appellant was due him the sum of $12,000; that

the district was indebted to appellant in a greater sum than appellant owed him, and he asked that garnishment issue against the district, which was done. On the 27th of September, 1922, the court entered an order allowing the district thirty days to answer, and enjoining the parties from taking depositions until the expiration of that time. On October 27, 1922, the district answered denying liability to any one for the work done by Perdue, and, in answer to the writ of garnishment, alleged that it had retained $12,000 out of the first estimates of the engineers after the service of the writ.

On January 22, 1923, the appellant and the surety company answered denying the allegations of Perdue's complaint. On February 3, 1923, one Spratlin, for himself and other taxpayers in the district, filed what he designated an intervention and cross-complaint, alleging that the action by Perdue against the appellant and the district involved the construction of the contract between the appellant and the district, and that Perdue and the district and its commissioners and the appellant and its subcontractors and engineers had entered into a collusion to defraud the taxpayers of the district. He alleged that the district and its officers had paid to the appellant approximately $1,500,000. He denied that the district was indebted to the appellant and Perdue in any sum, and prayed that the district and its officers be enjoined from paying to appellant, and that the appellant be enjoined from receiving, any further sums upon the contract for the construction of the improvement, and that the writ of garnishment be dismissed.

Upon the filing of this intervention, summons was issued and served on February 3, 1923, and on that day temporary injunction was issued, restraining the district from paying over any funds to the appellant or the subcontractors. On the 5th of February, 1923, an order was entered making the district a party defendant to the action, and on the next day an order was entered by the chancery court allowing the commissioners of the district

twenty days in which to complete their proof, and allowing appellant and Perdue ten days for taking proof in rebuttal, and allowing the interveners an additional thirty days after the expiration of the ten days allowed appellant and Perdue in which to take their proof, and directing that the cause should be submitted for consideration and judgment of the court without further delay. Later, on the 20th of February, 1923, Spratlin filed an amendment to his intervention and cross-complaint, seeking further judgment against the appellant and certain subcontractors and their sureties, upon which summons was issued March 12, 1923. On the 21st of March, 1923, Spratlin filed a second amendment to his intervention and cross-complaint, alleging collusion between the commissioners of the district and the appellant, and seeking to recover additional sums, amounting to several hundred thousand dollars, and also asked a mandatory injunction to compel the commissioners to proceed with the work and to restrain them from accepting any portion of the road as completed.

On the 27th of March, 1923, the record shows permission to file, and the filing of, an amendment to their pleadings by the interveners and an answer thereto by the district, and also there was noted of record the filing of depositions. On the same day an order was made directing that the cause be submitted on the 30th of April, 1923, and directing that all parties take proof by deposition, and granting the right to all parties to take oral testimony on submission of the cause.

On April 27, 1923, the interveners filed a petition for temporary injunction to restrain the appellant from disposing of its property. In the absence of the circuit judge and chancellor from Arkansas County, the county judge granted the petition and entered an order on April 28, 1923, restraining the appellant from disposing of its property. On the 30th of April, 1923, depositions of certain witnesses taken in vacation were noted as having been filed on the part of the district and the interveners

and made a part of the record. These depositions were noted as having been taken at various dates from March 1, 1923, to and including April 25, 1923. According to the recitals in the record, the following proceedings were had on April 30, 1923:

"On the call of this case comes A. M. Perdue, by counsel, A. F. Triplett, and announces ready for trial, and none of the parties object thereto, whereupon the court required the pleasure of all parties as to the submission of this cause; and come interveners, Spratlin *et al.,* by counsel, J. M. Brice; board of commissioners by their chairman, J. H. Boone; Southern Improvement Company (a corporation organized under the laws of Delaware) and Southern Surety Company (a corporation organized under the laws of Iowa), by their attorney, Sam W. Trimble; and Arkansas County Road Improvement District No. 5 (organized under act 169 of the Acts of 1919), by counsel, Jno. W. Moncrief, and all parties announced ready for trial, and consent to the submission of this cause upon the complaint of Spratlin *et al.,* answer of Southern Improvement Company, answer of Southern Surety Company, answer of Road Improvement District No. 5, additional or supplemental answer of said district, answer of board of commissioners, and thereupon this cause is submitted to the court on said pleadings with exhibits, all depositions taken with exhibits, and all other files in the case, and, by consent of all parties, this cause is taken under advisement by the court, and, by their consent, the judgment and decree of the chancellor and court is to be rendered in vacation, and it is so ordered."

On May 7, 1923, the court entered a decree in favor of Perdue against the appellant and the surety company in the sum of $11,844.37, and in favor of the district against the appellant and the surety company in the sum of $190,000, and restraining the commissioners of the district from paying the appellant any money and the appellant from accepting or receiving any money from

the commissioners of the district. The record shows that on May 31, 1923, the court entered an order approving a settlement and a decree between the surety company and the district by which the surety company paid the sum of $55,000, and was released from all liability on the decree against it, $12,500 of which was to be paid to Perdue. The appellant announces in its brief that it is not interested in the appeal in the original suit between Perdue and the appellant; that it only prosecutes the appeal from the decree in favor of the district in the sum of $190,000.

1. The appellant contends that the cause was not submitted by consent; that the recitals of the record of the submission of the cause, as above set forth, to the effect that the appellant, together with the other parties, announced ready for trial and consented to the submission of the cause upon the pleadings, exhibits and depositions, and that the cause, by consent of all parties, was submitted and taken under advisement, that they consented that the decree should be rendered in vacation, were all erroneous recitals. Counsel for appellant contends that the record itself shows that, some days prior to the 30th of April, 1923, counsel for appellant objected to the taking of testimony by the interveners, and gave notice that it would offer to file pleadings, and stated that, if the pleadings were overruled, appellant reserved the right to introduce testimony in defense of matters that had been brought out in the depositions taken for the interveners, and notified counsel for the interveners that appellant would take no depositions until the court had passed upon the motions which counsel for appellant proposed to offer to file. This all occurred prior to the recitals of the order showing the submission of the cause by consent of all parties, and in no manner tended to contradict the recitals of the record showing that the cause was submitted by the consent of all parties.

Furthermore, to sustain the contention that the cause was not submitted by consent, appellant relies upon

what is designated as a "supplemental transcript, or bystanders' bill of exceptions." This document was filed in this court November 6, 1923, three days after the filing of the original transcript. It does not contain a certificate of the clerk of the chancery court of Arkansas County identifying it as a part of the original transcript of the record in the cause. It was not filed in the office of the clerk of the chancery court of Arkansas County. The document contains what purports to be the affidavits of W. F. Coleman, E. B. Reynolds, and J. P. McGaughey. These affidavits were to the effect that the affiants were in the courtroom of the chancery court of Arkansas County on the 30th of April, 1923, when said court was in session and being presided over by the Hon. John M. Elliott; that the affiants saw and heard Sam W. Trimble, attorney for the appellant, on a call for motions, offer to file a supplemental answer, a motion to strike intervention, and motion to suppress testimony in the case of Perdue against appellant, and saw and heard the judge refuse to allow the papers to be filed; that Mr. Trimble and Mr. R. W. Wilson, attorneys for the appellant, stood with these papers in hand, and requested permission to file the same; that the presiding judge stated that he was not going to let any papers whatsoever be filed by the attorneys; that Mr. Wilson, attorney for the appellant, then asked the court to let the record show that these papers were offered for filing and to note their exceptions to the court's refusal to allow the same to be filed; that the judge thereupon refused to let the papers be filed, and said that the record should not show anything whatever as to the offer to file the papers, or any refusal of the court in not allowing them to be filed, or to note any exceptions on the record of the court's ruling. These affiants stated that they were not interested in the cause, and were merely bystanders in the courtroom. The affidavits, on their face, show they were made before a notary on the 5th of November, 1923. This document also contains the affidavit of Sam W. Trimble, attorney for the

appellant, to the effect that on Monday, November 5, 1923, at 10 o'clock A. M., he presented to the Hon. J. M. Elliott, chancellor and chancery judge of Arkansas County, Southern District, at the chancellor's office, in Pine Bluff, the "supplemental transcript or bystanders' bill of exceptions," and requested him to sign the certificate, either certifying or refusing to certify the same as contained therein; that he refused to sign the same.

It thus appears from the affidavit of Sam W. Trimble, one of the attorneys for the appellant, that the so-called "bystanders' bill of exceptions" was not presented to the judge of the chancery court of Arkansas County for his approval or rejection until November 5, 1923. The recitals of the record of the chancery court show that the cause was submitted for trial and taken under advisement on April 30, 1923. The recitals in the record do not show that the appellant asked and was granted time beyond the March term of the Arkansas County Chancery Court for preparing and presenting a bystanders' bill of exceptions. The record shows that the decree was rendered on May 7, 1923, the same being a day of the March term, 1923, of the Arkansas Chancery Court, Southern District. A regular term of the court had intervened the day when the decree was entered and the day when the appellant, through its attorney, presented to the chancellor in chambers its so-called bystanders' bill of exceptions for his approval or rejection.

Where a party in a chancery cause undertakes to preserve exceptions to the rulings of the trial court, not appearing of record, by bill of exceptions, the statutory method must be pursued.

Now, the statute provides that the party objecting to a decision of the trial court must except at the time the decision is made, and time may be given to reduce such exception to writing, but not beyond the succeeding term. The statute provides that, if the party excepting is not satisfied with the rulings of the trial court upon his exception, he may procure the signature of two

bystanders attesting the truth of his exceptions, and file the same as a part of the record; that these exceptions may be maintained and controverted by affidavits, not exceeding five in number on each side, to be filed with the clerk within ten days after the filing of the exceptions, which affidavits shall be a part of the record. See §§ 1318 and 1322, Crawford & Moses' Digest. It does not appear therefore that the appellant observed any of the statutory methods for bringing into the record by "bystanders' bill of exceptions" its exceptions to the rulings of the trial court, as shown by the recitals of the record of which it here complains. See *Boone* v. *Goodlett*, 71 Ark. 577; *Ayer-Lord Tie Co.* v. *Greer*, 87 Ark. 543; *Cox* v. *Cooley*, 88 Ark. 530; *Pearson* v. *State*, 119 Ark. 152; *Sneed* v. *State*, 159 Ark. 65-84; *So. Improvement Co.* v. *Elliott*, 160 Ark. 633.

The last case cited was a petition to this court by the appellant herein to compel the chancellor by mandamus to file the same papers which appellant here seeks to bring into the record by a bystanders' bill of exceptions. The appellant sets up in its petition that, on the day of the submission of this cause, it tendered and asked permission of the court to file these pleadings, and that the court refused its request. The chancellor filed a response to the petition for mandamus in this court, in which he states that the papers were offered after all the parties, through their attorneys, had voluntarily consented to a submission of the cause on the record then made, and that he refused to allow the pleadings filed after submission. In passing upon the issue thus joined in that proceeding, we said: "Each side has filed *ex parte* affidavits here on the issue of fact as to whether or not the additional pleas were tendered by petitioner before or after the actual submission of the cause. Permission of the court to a litigant to file pleas or other motions out of time is, or may be, according to the circumstances, a matter of discretion with the trial court, and the rule has quite frequently been announced by this court that a writ of mandamus cannot be used as a sub-

stitute for appeal, nor will the discretion of the trial court be controlled by mandamus. Where the trial judge refuses to act at all in the matter, this court may compel him by mandamus to do so, but, as before stated, it will not attempt to control the discretion of the trial court or to determine what the discretion of the court shall be. The court may or may not have erred in refusing to allow additional pleas to be filed, but any error committed in that respect must be corrected by appeal. Errors of the trial court in the progress of a case must be shown either by a bill of exceptions or by recitals made by the court on its record. If those methods of completing the record be denied by the trial court, a statutory remedy is afforded by bill of exceptions certified by bystanders. The fact that petitioner let the term of court elapse without effort to obtain a bill of exceptions in either of the modes specified by statute, affords no ground for allowing the extraordinary writ of mandamus.''

Since the appellant has failed to observe the method provided by statute for bringing into this record, by bystanders' bill of exceptions, its exceptions to the rulings of the trial court as contained in the recitals of the judgment roll, we are bound by those recitals. Such being the case, this disposes not only of the contention of the appellant that the cause was not submitted by consent, also of its further contentions that the cause was prematurely decided and that the intervention was improper.

2. The only remaining question presented by this appeal is whether or not the court erred in rendering its decree in favor of the interveners and the district. This decree is bottomed upon findings of fact by the trial court to the effect that the appellant had wholly failed to comply with its contract; that, by reason of such failure, the district had sustained damages largely in excess of its indebtedness to the appellant and largely in excess of the retained percentage. The court, after giving the appellant credit for all the work it had done

under the contract, and after crediting it with the amount of the retained percentage, found that there was still a balance due the district in the sum of $190,000. It was purely a question of fact as to whether or not the appellant had breached its contract by failing to perform the work according to the plans and specifications. The testimony bearing on this issue is set out at length in the purported abstract of the appellant. As abstracted, it embraces more than 300 pages.

It would unduly extend this opinion to set out and discuss in detail the testimony bearing upon this issue of fact. It is impracticable to do so. Suffice it to say we have read and carefully considered it all, and have reached the conclusion that the findings of fact by the trial court are not clearly against a preponderance of the evidence. Indeed, the preponderance of the evidence clearly supports the findings of the chancellor to the effect that the appellant failed to comply with its contract.

The testimony of H. R. Carter, the engineer of the district, and the local engineers under Carter, having immediate supervision of the work as same was being done, is all to the effect that the appellants did not perform the work in accordance with the plans and specifications which were a part of the contract. The testimony of these supervising engineers and also of many witnesses who were connected with, and who had opportunities to observe, the work as it was being done, all tended to show that the work was not done according to the plans and specifications. Also W. J. Parke and C. H. Miller, both civil engineers and experts of large experience, testified that they examined portions of the road embraced in the district, and that the work had not been done according to plans and specifications, and they went into detail showing the defects and imperfections in the work examined by them.

So we are thoroughly convinced, from a careful consideration of all the evidence, that the appellant violated its contract, and that the court was correct in so finding.

The court based the amount of its judgment on the testimony and a detailed statement by H. R. Carter, the engineer of the district, as follows:

Work to be done:

| | |
|---|---:|
| Line A, 6 miles of base to rebuild at $1,000 per mile............................ | $   6,000.00 |
| Line B, 6 miles of base to rebuild and repair at $500...................... | 3,000.00 |
| Line D, 5 miles base to be rebuilt, now covered by asphalt, at $2,000 ........................................... | 10,000.00 |
| Line D, 8 miles base damaged because of neglect in finishing, at $400 ...................................... | 3,200.00 |
| Line E, H, I, J, 14 miles gravel repair at $300 per mile........... | 4,200.00 |
| 72 miles shoulder repairs, at $250 per mile ................................ | 18,000.00 |
| 60,000 yards emb. Line B, G. Tichnor Levy settlement......... | 25,000.00 |
| 152,217.68 tons on which rebate of 30c per ton is due board acct. letter attached by S. Imp. ...................................... | 45,665.30 |
| 91,228 sq. asphalt of cheaper brand than called for by proposal, at 20c per yard..... | 18,245.60 |
| Amount due board for rock........... | 260,000.00 |
| Overtime, 350 days at $75................ | 26,250.00 |

|  |  |  |
|---|---:|---:|
|  |  | $419,560.90 |
| Credits retained per cent...........| $186,498.80 |  |
| Credits on rock acct................................ | 42,232.74 | 228,731.54 |
|  |  | $190,829.36 |
| Credits, $12,000 Perdue........................ |  | 12,000.00 |
|  |  | $178,829.36 |

The trial court found, among other things, that "in the construction and work by the contractor and defendant, Southern Improvement Company, it did not attempt in good faith to comply with the contract," and * * * that "the defects in the road and construction work were and are of a substantial and fundamental nature and character, and were in violation of the plans and specifications, agreements, and contract, and resulted from the gross negligence and bad faith of the contractor defendant, Southern Improvement Co., and all of these things were and are to the serious and substantial detriment and damage of said road improvement district." There was testimony tending to support the above findings of the court to the effect that the appellant "did not attempt in good faith to comply with its contract," and that its failure to comply with its contract "resulted from gross negligence and bad faith." In view of these findings by the trial court, we are unable to say that the decree of the court is excessive. It appears however from the record that, since the decree was rendered, the surety company has satisfied the judgment in favor of Perdue against the appellant, and the appellant should therefore be credited with that sum. The decree of the court below will therefore be modified by reducing the same to the sum of $178,829.36, and, as thus modified, it will be affirmed.